UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case No. CV12-09563 VBK

Yingli Green Energy Americas, Inc. a Delaware Corporation

Plaintiff,

v.

American Capital Energy, Inc. a New Jersey corporation

Defendant

**MOTION OF AMERICAN CAPITAL ENERGY INC. TO DISMISS AND**

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant American Capital Energy, Inc, pursuant to 28 U.S.C. § 1406(a) and Fed. R. Civ. P. 12(b)(3) and Fed. R. Civ. P. 12(b)(6), and Fed. R. Civ. P. 12(b)(1), moves to dismiss the Plaintiffs' Complaint. In the alternative, Defendant moves for the transfer of the case to courts in the state of New York.

**INTRODUCTION**

1. This Memorandum establishes grounds for dismissal of the Complaint. Pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), all claims should be dismissed because the Plaintiff ignores a valid forum selection clause and fails to comply with the contractual terms and forum splitting making claims in multiple jurisdictions.

2. Yingli Green Energy Americas, Inc. (Yingli), a Delaware Corporation, is a merchant of goods including solar panels. American Capital Energy Inc. (ACE), a New Jersey Corporation, is a solar developer and a solar engineering procurement and construction contractor.

3. The contractual relationship and dispute at issue in this case arose from contracts which were intended to invoke US Treasury Department Grant whose program for solar projects was set to expire at the end of 2011. In order to take advantage of the expiring grants: Yingli and ACE entered into a contract to purchase modules for the purpose of complying with the 5% Safe Harbor provisions of the Federal Grant Regulations. The regulations set forth a heavy burden to

comply with the 5% Safe Harbor which provide the owner of a Solar Array a grant equal to 30% of the cost from the government which in this case was a cash grant equal to the $24,000,000.

4. ACE paid a high price for solar modules which were to be purchased with the 5% down payment on the proviso that the contractual terms of delivery of said panels and segregation of same as provided for in the Security Agreement and executed by the parties.

5. Yingli was paid $745,000 by ACE for the purchase of the "Safe Harbor" modules. The modules were purchased for 3 separate Solar Array projects named Searchlight, Hidden Valley and Mashpee. The modules for Hidden Valley, P.O. #0197-11 were paid in full. There is no debt or liability on said modules under purchase order #0197-11.

6. ACE and Yingli negotiated Security Supply Agreements and Security Agreements on December 23, 2011. Purchase Orders were issued on December 23, 2011, however, were canceled and new purchase orders issued for the 3 separate sites with the December 23 Supply Agreement, attached and separate purchase order numbers.

7. Purchase Order Acknowledgments were issued by Yingli. Said Purchase Order Acknowledgements issued by Yingli on December 28, 2011 to said purchase orders indicated "Shipping Address Warehouse transfer @ Expeditors (Carson CA)".

8. The delivery required by the Security Agreement was New Jersey and the Supply Agreement deferred to the Security Agreement. The Purchase Orders of ACE were silent on delivery. Bills from the warehouse do not indicate the location of the panels. Finally, after examination for compliance of the 5% Safe Harbor it was discovered that the panels for the 3 solar arrays consisting of 14,490 panels were at Rancho Dominguez and 3024 panels at Carson. The panels located at Rancho Dominguez were not segregated from the other Yingli merchandise as required in the contracts and by the Security Agreement, the Supply Agreement and the Purchase Orders and in compliance with the Regulations for Safe Harbor.

9. Yingli not only did not deliver the modules to New Jersey, it did not segregate the modules from its own product.

10. Yingli's assertion in its complaint that "the panels are presently being housed in a warehouse…in the City of Carson California" complaint (at 1) does not even have support in Warehouse Transfer documents Yingli created for the ACE transactions.

11. The failure of Yingli to comply with the contract and all terms rendered the modules useless to ACE who expected as a vendor to purchase and build a solar array with the modules on a project with a major brokerage firm who was relying on qualifying for the 30% Cash Federal Grant which was predicated on compliance with the 5% Safe Harbor breached by Yingli.

12. The parties' contract, the December 2011 Security Agreement (referenced in the Complaint at #10) mandates that all disputes "arising out of or relating to this Agreement, the Obligations, any Collateral, or any document delivered hereunder or in connection herewith shall be resolved exclusively by litigation in the federal or state courts situated in New York".

**PROCEDURAL FACTS**

13. The Supply Agreement notes arbitration in New York. There is no reference whatever to California for jurisdiction on any issues. Yingli has already selected the arbitration city of New York as noted in its pleadings.

14. Yingli Green Energy Americas, Inc. (Yingli) instituted arbitration by filing for arbitration on September 26, 2012 against American Capital Energy, Inc. (ACE). (Cover sheet)

15. The Demand for Arbitration referred to the "December 2011 Supply Agreement" and the Supply Agreement dated May 17, 2011 between Yingli and ACE (Demand at 1.) The Demand for Arbitration outlines a contract dispute between the parties over the sale of goods and implicitly raises questions about the adequacy of compliance with contract terms.

16. Yingli Green Energy Americas, Inc. (Yingli) commenced this lawsuit six weeks later, on November 12, 2012 by filing a Complaint in the US District Court in the Central Division of

California, against the same party defendant who is the respondent in the Demand for Arbitration, American Capital Energy, Inc. (ACE).

17. The Federal Complaint admits that Yingli initiated arbitration against ACE in New York. (Complaint at 3) Yingli goes on to refer to "the Security Agreement" between the parties.

18. Yingli attempts to establish in this Court Purchase Order nonpayment and seizure of merchandise what this case involves from ACE perspective is involves millions of dollars in damages for breach of contract caused by Plaintiff Yingli.

19. The Complaint stacks up unsubstantiated allegations: that an unnamed warehouse purportedly containing "the property at issue", is owned (upon information and belief) by "a third party agent" of ACE. (Complaint at 23)

**FACTS OF THE CONTRACTUAL RELATIONS**

20. ACE and Yingli entered into the December 2011 Supply Agreement so that ACE could qualify three solar projects under the "5% Safe Harbor" provision of the American Recovery and Reinvestment Act of 2009 which allowed eligible taxpayers, meeting certain strict standards to receive a grant from the U.S. Treasury Department equal to 30% of certain qualified expenditures with no maximum credit (the "Grant").

21. The Grant was available only to qualifying renewable energy installations which had "begun construction" prior to December 31, 2011 in accordance with the guidance promulgated by the U.S. Treasury Department which required a Grant applicant to have "begun construction" through the "5% Safe Harbor" under which an applicant must have documented that it paid or incurred equal to or greater than five (5%) percent of the eligible costs of the renewable energy project during 2011 under binding written contracts.

22. Yingli was required under the December 2011 Supply Agreement and Security Agreement, and applicable law to (i) deliver and transfer title to the Product prior to 2012 so that ACE incurred the required cost; and (ii) provide ACE with complete and accurate documentation identifying

ACE's property and the timely delivery of the Product in order for ACE to satisfy the incurred cost requirements, to meet the 5% Safe Harbor,

23. Yingli was specifically required under Section 14(c) of the December 2011 Security Agreement between the parties, to keep the Product with Expeditors – New Jersey at 150 Raritan Center Parkway, Edison, New Jersey, to segregate the Product from all other Yingli equipment, and to identify the Product as owned by ACE.

24. Yingli advised ACE in multiple emails and conference calls that Yingli's standard supply agreement was formatted to meet binding written contract requirement to achieve the 5% Safe Harbor benefit.

25. Yingli failed to meet the requirements of the December 2011 Security Agreement, including without limitation the requirements set forth in Paragraphs "7" and "8" by not property delivering, segregating and documenting the Product as required, causing ACE to lose the 5% Safe Harbor Grant benefit for three applicable projects.

26. Warehouse transfer documents obtained by ACE during attempts to establish the grant discovered that documents signed by Yingli on December 30, 2011 show that most of the goods were shipped not to Carson but to Rancho Dominguez California instead.

27. ACE intended the Safe Harbor Modules for three projects Searchlight, Hidden Valley and Mashpee the total value of these projects was approximately one hundred million dollars ($100,000,000).

28. Directly because of Yingli's above failures, ACE has suffered substantial damage, including without limitation the inability to secure financing for the three projects without the Grant. For example one major investment bank's term sheet upon examination by their Counsel, questioned the compliance with the 5% Safe Harbor conditioning the $80,000,000 investment in the Searchlight project upon ACE guaranteeing the Grant.

29. Under the May 2012 Security Agreement, ACE has the right to set-off amounts owed under that agreement against amounts Yingli owes ACE under the December 2011 Security Agreement.

30. There are numerous other issues of offset against Yingli noted in the including issues

31. Yingli made invalid threats in a letter dated October 9, 2012 (the "Letter") to file a mechanic's lien against property located at 6200 Franklin Boulevard Sacramento California despite knowledge that Yingli had failed to satisfy the requirements for eligibility to file any such lien.

32. ACE completely disputes ever granting Yingli any right to a security interest in "all goods, including but not limited to solar modules, purchased by the Debtor from Secured Party, whether or not owned or hereafter acquired, and all proceeds and products of the foregoing".

33. The filing by Yingli of a willfully inaccurate financing statement with the State of New Jersey on July 18, 2012 despite ACE having never granted to Yingli any such broad security interest, further improperly and intentionally interfered with ACE's contractual relations.

34. All of these issues have been raised in the answer and counterclaim filed in the New York Arbitration which have yet to be litigated with judgment rendered before relief granted to Yingli arbitrarily.

## ARGUMENT

### THE PARTIES SELECTED ANOTHER FORUM

In their contract, the parties specified a forum for resolving disputes "courts situated in New York". The plaintiff commenced on action in an arbitration forum, and weeks later instituted the current action in another forum ignoring the contractual mandate. The present action is merely an attempt to open another front in another forum with the same claims against the same party.

A motion to enforce a forum selection clause is treated as a motion to dismiss pursuant to Rule 12 (b)(3). Doe 1 v AOL LLC 552 F.3d 1077 (2009) Court of Appeals 9th Circuit (2009) In ruling on a motion to enforce a forum selection clause, a court need not accept Plaintiff's pleadings as true, and facts outside the pleadings may be considered. *Id.* (citation omitted). Forum selection clauses are prima facie

valid and should not be set aside unless the party challenging enforcement of such a provision can show it is "'unreasonable' under the circumstances." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996). "[In] the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." Murphy v. Schneider Nat'l. Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).

**PREDICATES FOR EQUITABLE RELIEF ARE ABSENT**

In its introduction, before the section on "factual allegations", the plaintiff makes numerous conclusory statements that presume the truth of doubtful assumptions. It claims that panels are housed in the warehouse of an agent of the Defendant. Yingli asserts that California Federal equity actions are needed to "ensure the meaningfulness of the arbitration" Yingli filed elsewhere. These assertions cannot be the basis for extraordinary prejudgment equitable relief for this plaintiff. Since recent newspaper articles namely the Specific Times note that Yingli will be in bankruptcy and Yingli's own equitable reach of the contract preclude such a remedy.

This plaintiff is not entitled to any prejudgment relief from this Court. It must first assemble a case with evidence and establish the right to a judgment. This is a garden variety contract dispute. ACE has paid 100% for the goods under purchase order # 0197-11. Having paid for the goods, any effort by Yingli to gain possession of them would be a post judgment remedy and would have to await the outcome of legal proceedings in New York.

Likelihood of success on the merits is one requirement for equitable relief. This Court, at this stage of the proceedings, is not positioned to determine the adequacy of the panels the plaintiff claims it delivered. The improper delivery of those goods forms the basis for a substantial counterclaim which the defendant intends to assert in the proper, agreed-upon forum.

Money damages are adequate to satisfy any judgment this plaintiff might obtain, if any. This plaintiff alleges it financed the defendant's purchase of the plaintiff's objects. The plaintiff who, less than one year ago was comfortable with the defendant's financial status now seeks to invoke the Court's

extraordinary powers because of new found, belief-based insecurity. If the plaintiff can establish entitlement to any remedy, ordinary money damages will suffice.

The plaintiff is a vendor of goods. Divining a threat of irreparable harm in this circumstance would make every commercial claim equitable rather than legal. Any potential harm would be abated by ordinary pursuit of the elements of the claim in a suit for money damages, with proof and evidence, in the forum the parties chose.

**PLAINTIFF PROVIDES NO BASIS FOR VENUE IN CALIFORNIA**

The complaint fails to establish any basis for venue in this Court. Plaintiffs have the "obligation to institute the action in a permissible forum," and thus bear "the burden of establishing that venue is proper." Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003).

No discovery is needed before this Court dismisses Plaintiffs' complaint. See Mwani v. Bin Laden, 417 F.3d 1, 17 (D.C. Cir. 2005) (upholding a denial of jurisdiction-related discovery because the court could "not see what facts additional discovery could produce that would affect [the] jurisdictional analysis") (internal quotation marks and citation omitted); see also United States v. Toushin, 714 F. Supp. 1452, 1460 (M.D. Tenn. 1989) (denying motion for venue-related discovery because the court was disposing of the venue motions and had "no reason to prolong this matter with unnecessary discovery"). This Court should therefore dismiss the complaint for lack of venue.

**DISMISSAL IS SUPPORTED ON SEVERAL GROUNDS**

The Ninth Circuit has held that motions to dismiss on the basis of a forum selection clause must be analyzed under federal law. Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 512–13 (9th Cir. 1988);

Motions by defendants seeking dismissal on the basis of a forum selection clause can be granted on several bases:

First, defendants have moved for dismissal under Rule 12(b)(3) on the theory that the clause makes venue in the initial forum improper. See, e.g., Commerce Consultants Int'l v. Vetrerie Riunite, S.p.A., 867 F.2d 697, 699–700 (D.C. Cir. 1989) (finding that defendant's choice of a Rule 12(b)(3)

motion to dismiss due to a forum selection clause was proper). A rule 12(b)(3) motion seeks dismissal on the basis of "improper venue." FED. R. CIV. P. 12(b)(3).

Second, defendants have sought dismissal under Rule 12(b)(6) on the theory that bringing the suit in the agreed-upon forum is a necessary element to sustain the cause of action. See, e.g., Lambert v. Kysar, 983 F.2d 1110, 1122 (1st Cir. 1993) (finding that defendant's Rule 12(b)(6) motion to dismiss due to a forum selection clause was properly granted). A rule 12(b)(6) motion seeks dismissal due to the plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

Third, Defendants have moved for dismissal under Rule 12(b)(1) on the theory that the forum selection clause eliminates the subject-matter jurisdiction of the forum. See AVC Nederland B.V. v. Atrium Inv. P'ship, 740 F.2d 148, 156 (2d Cir. 1984) (analyzing the defendant's Rule 12(b)(1) motion to dismiss grounded in part on a forum selection clause). A rule 12(b)(1) motion seeks dismissal due to the "lack of subject-matter jurisdiction" of the court. FED. R. CIV. P. 12(b)(1).

**CLAIM SPLITTING RULES MANDATE DISMISSAL**

The same plaintiff who commenced arbitration elsewhere against the defendant, based on a contract dispute, now brings a separate action against the same defendant based on the same contracts. This Court should not condone claim splitting.

"The rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 275 Fed. App'x 256, 265 (4th Cir. 2008) (internal quotation omitted). A party is thus barred from bringing an action on the same subject to the same court against the same defendants when the previous action is still pending in federal court. Id. (citing Curtis v. Citibank, N.A., 226 F.3d 133, 138-39 (2nd Cir. 2000)). The claims need not be identical for the rule against claim

splitting to apply. Rather, the suits and claims asserted therein need only "arise out of the same transaction or series of transactions or the same core of operative facts." Pueschel v. United States, 369 F.3d 345, 355 (4th Cir. 2004) (quoting In re Varat Enters., Inc., 831 F.3d 1310, 1316 (4th Cir. 1996)). "It is undisputed that it is within a district court's power to stay or dismiss a suit that is duplicative of another federal court suit." Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 452 F. Supp. 2d 621, 626 (D. Md. 2006) (citing Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)).

The instant case and the arbitration this plaintiff filed, as a whole arises from the same nucleus of facts and transactions. As the Fourth Circuit has explained, "Were we to focus on the claims asserted in each suit, we would allow parties to frustrate the goals of res judicata through artful pleading and claim splitting given that '[a] single cause of action can manifest itself into an outpouring of different claims.'" Pueschel, 369 F.3d at 355 (quoting Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1166 (1st Cir. 1991)).

This plaintiff should be redirected to pursue the claim as a whole either in the forum where the parties agreed to resolve "all disputes arising out of or in any way related to" the contracts, or to the arbitration forum where the Plaintiff initially filed.

Under the first-to-file rule, "when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." Cedars-Sinai Medical Center v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997). The purpose of this rule is to promote efficiency and to avoid duplicative litigation. Alltrade, Inc. v. Uniweld Prod., Inc., 946 F.2d 622, 625 (9th Cir. 1991). Under the rule, a district court may transfer, stay or dismiss the second action if it determines that it would be in the interest of judicial economy and convenience of the parties. Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982). The pre-requisites for application of the doctrine are chronology and identity of the parties and issues involved. Alltrade, 946 F.2d at 625.

**DISMISSAL OF ALL CLAIMS IS APPROPRIATE**

In this case, dismissal—not transfer is appropriate. Because Plaintiff filed this case in the wrong court, the resolution of venue is governed by 28 U.S.C. § 1406(a), which provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. Id.

Accordingly, this Court has the discretion either to dismiss these consolidated cases or to transfer them to a district court where venue is proper, namely the courts of New York. When venue is defective, 28 U.S.C. § 1406(a) authorizes this Court either to dismiss or to transfer the action.

It is appropriate for this Court to dismiss rather than transfer an action when a plaintiff has "committed an obvious error in filing [its] action in the wrong court, and thereby imposed substantial unnecessary costs on both the defendant and the judicial system." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1201 (4th Cir. 1993) (affirming a dismissal for lack of personal jurisdiction). In such a circumstance, it would not serve the interests of justice and judicial economy "simply to transfer [the] action to the proper court, with no cost to" Plaintiffs or Plaintiffs' counsel. Id.; Coté v. Wadel, 796 F.2d 981, 984-85 (7th Cir. 1986) (Posner, J.) (dismissing rather than transferring an action, even though the statute of limitations had run, because "litigants and the public will benefit substantially in the long run from better compliance with the rules limiting personal jurisdiction"). This general rule also is applicable to cases where a plaintiff sues in an obviously improper forum. Although general practice is to transfer a case to a forum where venue is proper, "district courts often dismiss a case, rather than transfer it under Section 1406(a), if the plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper and similar conduct should be discouraged." 14D WRIGHT, MILLER & COOPER § 3827 & n.37.

WHEREFORE, Defendants respectfully request that the Court grant their Motion and enter an order dismissing in their entirety the Complaint; or, in the alternative, transferring the case to New York.

American Capital Energy, Inc.

Dated: December 18, 2012

Respectfully submitted,

Gregg J. Goldfarb
Law Office of Gregg J. Goldfarb
4264 Overland Avenue
Culver City, California 90230
T: 310-815-0963
F: 310-839-0518

By:______________________
GREGG J. GOLDFARB
California State Bar No. 156506

ROBERT K. DOWD, P.C.
3141 Hood Street, Suite 650
Dallas, Texas 75219-5026
T: (214) 922-9330
F: (214) 922-9372

BY:______________________
ROBERT K. DOWD
Texas State Bar No. 06070800
*Pro Hac Vice* Application Filed

## PROOF OF SERVICE

STATE OF CALIFORNIA ]
] ss.
COUNTY OF LOS ANGELES ]

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Law Offices of Gregg J. Goldfarb, A.P.C, 4264 Overland Avenue, Culver City, California 90230.

On December 19, 2012, I served the foregoing document described as **MOTION OF AMERICAN CAPITAL ENERGY, INC. TO DISMISS AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** on the interested, by electronically serving such document, as required by the Court's Order Mandating Electronic Filing and Service, to be served on the parties listed to this action via e-service to:

Jeffery R. Atkin, Esq.
Michael B. McCollum, Esq.
Kimberly C. Cobo
FOLEY & LARONER, LLP
555 South Flower Street Suite 3500
Los Angeles, CA 90071-2411
Phone: (213) 972-4500 / Fax: (213) 486-0065
Emails: jatkin@foley.com; mmcollum@foley.com; kcobo@foley.com

____ **BY MAIL:** I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Culver City, California. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

____ **BY FACSIMILE:** I sent via facsimile, a copy of said document(s) to the following addressee(s) at the following facsimile number(s) in accordance with the written confirmation of counsel in this action.

_X_ **BY E-SERVICE:** I caused such document, as required by the Court's Order Mandating Electronic Filing and Service, to be served on the parties listed to this action via e-service. The transmission was reported as complete and without error. A copy of the filing receipt will be maintained with the document(s) in our file.

I declare that I am employed in the office of a member of the bar of this court as whose direction the service was made.

Executed on December 19, 2012, at Culver City, California.

GREGG J. GOLDFARB, ESQ.