1  JEFFERY R. ATKIN CA Bar No. 235938
       jatkin@foley.com
2  MICHAEL B. MCCOLLUM CA Bar No. 235447
       mmccollum@foley.com
   KIMBERLY A. COBO CA Bar No.259018
3      kcobo@foley.com
   **FOLEY & LARDNER LLP**
   ATTORNEYS AT LAW
4  555 SOUTH FLOWER STREET, SUITE 3500
   LOS ANGELES, CA 90071-2411
   TELEPHONE:   213.972.4500
5  FACSIMILE:   213.486.0065

6  Attorneys for Plaintiff Yingli Green Energy Americas, Inc., a Delaware corporation

7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10

11

| | |
|---|---|
| Yingli Green Energy Americas, Inc., a Delaware corporation | Case No: CV12-09563 VBK |
| Plaintiff, | **YINGLI'S OPPOSITION TO AMERICAN CAPITAL ENERGY'S MOTION TO DISMISS** |
| v. | Judge:   Victor B. Kenton |
| American Capital Energy, Inc., a New Jersey corporation | Date: January 15, 2013
Time: 10:00 a.m.
Dept.: 590 |
| Defendant. | |
| | Complaint Filed: November 8, 2012 |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS .............................................................................. 2

III. THIS COURT IS THE PROPER FORUM ..................................................... 4

    A. The Parties' Contract Permits Suit In This Forum .............................. 4

    B. Public Policy Favors This Forum ........................................................ 7

IV. VENUE IS PROPER IN CALIFORNIA ......................................................... 8

V. THERE IS NO CLAIM SPLITTING NOR IS DISMISSAL OR TRANSFER WARRANTED UNDER THE "FIRST TO FILE" RULE ....... 8

VI. CONCLUSION .............................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Adams v. California Dept. of Health Servs.,* 487 F.3d 684, 684 (9th Cir. 2007) ………9

*Doe 1 v. AOL LLC,* 552 F.3d 1077, 1081 (9th Cir. Cal. 2009) ……………………4, 5, 7

*Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) ………………………………………..2

*Liverpool & London Steamship Protection & Indem. Assoc. Ltd. v. M/V Queen of Leman* 2001 U.S. Dist. LEXIS 8912, *10-13, 2001 WL 874756 (E.D. La. February 20, 2001) ………………………………………………….......5-7

*M/S/ Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) …………………………7

*Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 & n.24 (11th Cir. 1999)……………….5-6

*Toyo Tire Holdings v. Cont'l Tire*, 609 F.3d 975 (9th Cir. 2010) ……………………..10

**STATE STATUTES**

*Cal. Code Civ. Proc. § 512.010(b)...*……………………………………………………...10

Cal. Code Civ. Proc. § 512.060 ………………………………………………….......10

## I. INTRODUCTION

Plaintiff Yingli Green Energy Americas, Inc. ("Yingli") has brought this action for writ of possession to obtain the return of millions of dollars worth of solar panels that it sold to American Capital Energy, Inc. ("ACE") one year ago, which are sitting unused in two warehouses in Los Angeles County, and for which ACE has failed to pay Yingli. ACE has sought to obfuscate the issues and delay its payment obligations at every turn. Yingli had no choice but to file this action under the terms of the operative security agreement, and ACE's motion to dismiss is only the latest example of its ongoing delaying tactics.

In its motion, ACE argues that this action should be brought instead in state or federal court in New York pursuant to a forum selection clause; however, ACE ignores the last sentence in that forum selection paragraph, which gives Yingli the right to pursue litigation in "any jurisdiction or jurisdictions." That sentence is clearly intended for situations such as this, where the product sold by Yingli is being wrongfully held in warehouses in Los Angeles County.

ACE also argues that venue is not proper in California, but cites no authority and offers no evidence against venue being proper because the conduct complained of and the property wrongfully withheld is located here in Los Angeles County.

ACE finally argues that this case should be dismissed because it violates the rule against "claim splitting" and the "first to file rule" because the same claims and issues are being raised in the arbitration. Quite the contrary, this action does not seek the same relief as the arbitration, and it does not seek to undermine the arbitration. Yingli's efforts to repossess the panels are authorized under its security agreement, and repossession is being sought in conjunction with – not contrary to – the arbitration. Repossession is also imperative to preserving the meaningfulness of the arbitration because the panels have rapidly depreciated in value (approximately $500,000 in just the last few months alone) and because ACE will be unable to pay Yingli the full amount owed on the solar panels. This action

is the most direct and efficient means of obtaining the repossession and resale of the panels, and it is plainly authorized under the parties' contract.

## II. STATEMENT OF FACTS

The facts pled in the Complaint and that support this writ of possession action are straightforward. While ACE attempts to inject a variety of facts in its motion to dismiss, its factual statements are both unsupported by any evidence and improper in the context of a motion to dismiss, and should thus should be disregarded.[1] Regardless, ACE's various statements are also plainly irrelevant to this writ of possession action.[2]

As alleged in the Complaint, on December 23, 2011, Yingli and ACE entered into a Supply Agreement for the supply of solar panels to ACE (the "December 2011 Supply Agreement"). (Complaint, ¶ 8). Pursuant to the December 2011 Supply Agreement, ACE agreed to purchase from Yingli, and Yingli agreed to sell to ACE, all items described in purchase orders submitted to Yingli by ACE and acknowledged by Yingli. (*Id.*, at ¶ 9). In conjunction with the December 2011 Supply Agreement, Yingli and ACE also entered into a Security Agreement on December 23, 2011 (the "December 2011 Security Agreement").

---

[1] *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light most favorable to the plaintiff.). A motion to dismiss "is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, at 354 (3d ed. 2004).

[2] For example, ACE argues that it has various offset claims against Yingli that allow ACE to somehow unilaterally decide to withhold payment while continuing to possess the panels. Not only are these claims clearly foreclosed by the contract documents themselves, they are irrelevant to this writ of possession action because they should instead be raised in the arbitration, where the parties are currently litigating their broader contract disputes. As explained in Yingli's motion for writ of possession and further below, this writ of possession action simply seeks to return the panels to Yingli for Yingli to resell them in order to mitigate Yingli's damages, narrow the amount of damages in dispute, and thereby preserve the meaningfulness of that arbitration. That arbitration is where these issues should be resolved.

(*Id.*, at ¶ 10). The December 2011 Security Agreement provided that Yingli, the Secured Party, may finance ACE's, the Debtor's, purchase of solar panel products under the December 2011 Supply Agreement from Yingli.  (*Id.*, at ¶ 11).

Accordingly, Section 8 of December 2011 Security Agreement provided that in the event that ACE defaulted under the December 2011 Security Agreement, Yingli "shall have all rights and remedies for default provided by the Uniform Commercial Code or any other applicable law, and Secured Party may, at its option, do any one or more of the following: (a) declare any and/or all Obligations immediately due and payable without demand or notice; except that all Obligations shall automatically become due and payable in the event Debtor becomes subject to any receivership, insolvency, or bankruptcy proceeding; (b) *take possession of the Collateral without notice or hearing*, and Debtor hereby expressly waives any right to notice or a prior hearing; (c) enter upon Debtor's premises or other premises where any Collateral may be located to take possession of the Collateral and otherwise exercise its rights under this Agreement or applicable law; (d) require Debtor to assemble the Collateral and make it available to Secured Party at a place designated by Secured Party; (e) *sell or otherwise dispose of all or any part of the Collateral at public or private sale in accordance with the Uniform Commercial Code* and/or (f) exercise its *other rights and remedies under this Agreement and applicable law*.  Secured Party may purchase any or all Collateral at any private sale.  Reasonable notice of a public or private sale, if required, shall be given if notice is mailed to Debtor at least ten calendar days prior to the time of the sale or other disposition." (*Id.*, at ¶ 12) (emphasis added).

Paragraph 13(f) of the December 2011 Security Agreement also provides, in full:

> This Agreement, the respective rights and responsibilities of the parties hereunder, and the Obligations shall be governed by and construed in accordance with the laws, without reference to principles

of conflicts of laws, of the state of New York.  Any dispute or claim arising out of or relating to this Agreement, the Obligations, any Collateral, or any document delivered hereunder or in connection herewith shall be resolved ***exclusively by litigation in the federal or state courts situated in New York, New York*** and the courts having jurisdiction to hear appeals from such courts.  Debtor hereby submits itself to personal jurisdiction in such courts with respect to such disputes, claims and litigation, and waives any objection based on lack of personal jurisdiction, improper venue or forum non conveniens.  Debtor waives personal service of any and all process, and consents to all such service of process made by mail or by messenger directed to the address specified below.  ***Nothing herein shall*** affect Secured Party's right to serve process in any manner permitted by law, or shall ***limit Secured party's right to bring proceedings against Debtor or its property or assets in the competent court of any jurisdiction or jurisdictions***.

(emphasis added).  (Sachs Declaration in Support of Motion for Writ of Possession, at Docket 5-3, Exhibit B, p.13).[3]

ACE purchased and received from Yingli $5,012,700 of 280W solar panels on December 28, 2011, and then contrary to its obligation under the contract and purchase orders, failed to pay Yingli $4,260,186.35 for those panels.  (Complaint, at ¶¶ 13-22).  Both ACE and the third-party warehousing company that continues to hold the panels and act under the direction of ACE have refused to permit Yingli to retake possession of the panels.  (Complaint, at ¶ 23).

## III.   THIS COURT IS THE PROPER FORUM

### A.   The Parties' Contract Permits Suit In This Forum

At the outset, while ACE rightly notes that a motion to enforce a forum selection clause is treated as a motion to dismiss pursuant to Rule 12(b)(3) and thus facts outside the pleadings may be considered for purposes of such motion,[4] ACE offers no evidence in support of its motion.

---

[3] Yingli cites and references this declaration and exhibit solely for purposes of addressing ACE's forum argument, in which the Court may consider evidence extraneous to the Complaint.

[4] *Doe 1 v. AOL LLC,* 552 F.3d 1077, 1081 (9th Cir. Cal. 2009).

4
OPPOSITION TO MOTION TO DISMISS
CASE NO. CV12-09563

4813-8023-0162.2

For purposes of this motion, the Court may reference the contract documents already attached to the Sachs Declaration in support of Yingli's pending Application for Writ of Possession.[5]

ACE points out the language in paragraph 13(f) of the December 2011 Security Agreement that all disputes "shall be resolved exclusively by litigation in the federal or state courts situated in New York." But ACE omits any reference or discussion of the sentence at the end of this very same paragraph, which states, "**Nothing herein** shall affect Secured Party's right to serve process in any manner permitted by law, or **shall limit Secured party's right to bring proceedings against Debtor or its property or assets in the competent court of any jurisdiction or jurisdictions.**" (emphasis added). (Sachs Dec., Exhibit B).

Courts "apply federal law to the interpretation of the forum selection clause." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. Cal. 2009) (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988)). In doing so, courts "look for guidance 'to general principles for interpreting contracts.'" *Id.* (citing *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999)). "'Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first.' . .[courts] read a written contract as a whole, and interpret each part with reference to the whole." *Id.*, (internal citations omitted).

A plain reading of the forum selection clause, including the last sentence, clearly permits suit by the Secured Party (Yingli) in "any jurisdiction or jurisdictions." Indeed, other courts have come to the same conclusion when

---

[5] Because of the overlapping issues, the Application for Writ of Possession and this Motion to Dismiss are scheduled to be heard together on January 15, 2012.

confronted with similar language. *See e.g., Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 & n.24 (11th Cir. 1999); *Liverpool & London Steamship Protection & Indem. Assoc. Ltd. v. M/V Queen of Leman*, 2001 U.S. Dist. LEXIS 8912, *10-13, 2001 WL 874756 (E.D. La. February 20, 2001).

In *Snapper*, the parties' agreement contained a forum selection clause that provided that any legal action regarding the parties' agreement may be brought in the state or federal courts of Georgia. However, the forum selection clause also contained a carve-out provision that stated: "Nothing herein shall affect the right of Creditor to commence legal proceedings or otherwise proceed against the Undersigned in any other jurisdiction or to serve process in any manner permitted or required by law." *Snapper*, 171 F.3d at 1260. The court held that the clause granted Snapper, the Creditor, *the absolute right to choose the forum* for litigation among the stated Georgia state or federal courts, *or any other court of competent jurisdiction*. *Id*. The court further noted that the language of the contract required an absolute submission by the debtor to the jurisdiction of the creditor's choosing. *Id.* at 1262.

Similarly, in *Liverpool*, plaintiffs, indemnity insurers, sued defendants, owners and operators of a vessel, for unpaid premiums on protection and indemnity insurance coverage. *Liverpool*, 2001 U.S. Dist. LEXIS 8912. After defendants filed a motion for summary judgment, plaintiffs asserted that their claim constituted a maritime lien for necessaries that could be exercised in any jurisdiction based on a rule in their handbook which provided that "[t]hese rules and any special terms of entry form a contract of insurance between the Association and a Member, and *subject to the right of the Association under Rule 43B to enforce its right of lien in any jurisdiction in accordance with local law in such jurisdiction*, shall be construed in accordance with English law." *Id.* at *7-8 (emphasis added). The handbook's Rule 43B provided: "Subject to the provisions of Rule 43A the merits of any claim shall be determined by the English High Court

which shall have exclusive jurisdiction in such matters.  *However, nothing herein shall affect or prejudice the right of the Association to take action and/or commence proceedings in any jurisdiction to enforce its right of lien on ships or to otherwise obtain security by seizure, attachment, or arrest of assets for any amounts owed to the Association.*"  *Id.* at *8 (emphasis added).  The district court held that although the rules provided that substantive English law was applicable to any contract interpretation, the rules permitted plaintiffs (the Association) to commence proceedings and attempt to enforce a lien in any jurisdiction. *Id.* at *12-13.

Here, the December 2011 Security Agreement provides that any disputes or claims arising out the agreement are to be resolved exclusively by litigation in the federal or state courts of New York, and just like the agreement that was at issue in *Liverpool*, it also contains a carve-out provision allowing for the Secured Party (Yingli) "to bring proceedings against Debtor or its property or assets in the competent court of any jurisdiction or jurisdictions."

Such a carve-out makes sense, particularly in business transactions such as this, where property that is supplied by the creditor to the debtor may be temporarily stored in a jurisdiction other than that chosen by the dispute resolution clause.  This framework is precisely the case here.  Pursuant to the terms of the December 2011 Security Agreement, in the event of a default, Yingli (as the Secured Party) may file suit in the competent court of any jurisdiction.

### B.     Public Policy Favors This Forum

Courts also have discretion to refuse enforcement of a forum-selection clause where transfer would "contravene a strong public policy of the forum in which the suit is brought whether declared by statute or by judicial decision." *M/S/ Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. Cal. 2009).  Here, were the forum clause read to require Yingli to bring an action in a state or federal court in New York for possession of

property located in California – the natural outcome of which is that a court needs to issue an order directing a California Marshall to seize the property in Los Angeles – a state or federal court in New York of course would not be able to issue such an order.  This would contravene basic California public policy favoring the return of property wrongfully held in California to its rightful owner.   *See* Cal. Code Civ. Proc. §§ 512.010(b), 512.060 (directing courts to issue writ of possession where petitioner shows, among other things, that property is "wrongfully detained by the defendant").

Of course, the Court need not reach this predicament because the contract clearly provides for actions in this court or "any jurisdiction or jurisdictions."

## IV.     VENUE IS PROPER IN CALIFORNIA

ACE argues in passing that Yingli provides no basis for venue in California, but ACE offers no reasons, facts, or arguments for its challenge to venue in California or this district.  (Motion, p. 8).

To the contrary, Los Angeles is the County, and thus the Central District of California is the district, in which "a substantial part of the events or omissions" giving rise to the claim for writ of possession occurred, and also in which a "substantial part of property" that is the subject of the action is situated.  28 U.S. § 1391(b)(2).  Specifically, over three million dollars worth of unused solar panels is presently locked in a warehouse in Los Angeles County being wrongfully withheld by ACE due to its failure to pay Yingli for the panels.  (Complaint, ¶ 1).

## V.     THERE IS NO CLAIM SPLITTING NOR IS DISMISSAL OR TRANSFER WARRANTED UNDER THE "FIRST TO FILE" RULE

ACE's claim splitting and "first to file" arguments are severely misplaced. Yingli does not bring this action to avoid arbitrating its claims in arbitration in New York or to create a multiplicity of inefficient actions arising out of the same

1  underlying harm and seeking the same relief.  Whereas Yingli seeks contract
2  damages in the New York Arbitration, Yingli seeks by way of this action a simple
3  writ of possession and resale of the solar panels.  It is intended to mitigate Yingli's
4  damages and complement – not contradict – the New York arbitration.  To the
5  extent Yingli is able to resell the panels following repossession of the panels, the
6  proceeds from such a resale would be deducted from Yingli's contract damages
7  claim in the arbitration.  Were this Court to require Yingli's possession claim be
8  litigated in the arbitration, Yingly would still have to return to court in Los Angeles
9  for enforcement.

10       To determine whether a suit is duplicative, and therefore barred by the claim
11  splitting doctrine, the Ninth Circuit applies the following four-part test: (1) whether
12  rights or interests established in the prior judgment would be destroyed or impaired
13  by prosecution of the second action; (2) whether substantially the same evidence is
14  presented in the two actions; (3) whether the two suits  involve infringement of the
15  same right; and (4) whether the two suits arise out of the same transactional
16  nucleus of facts.  *Adams v. California Dept. of Health Servs.*, 487 F.3d 684, 684
17  (9th Cir. 2007).

18       ACE's argument of claim-splitting clearly falters on the first and third
19  elements of the test.  The rights and interests of Yingli and ACE in the arbitration
20  would not be destroyed or impaired by the prosecution of this action.  To the
21  contrary, they would be advanced.  Whereas the arbitration involves infringement
22  of Yingli's right to payment for the panels under the Supply Agreement, this suit
23  involves infringement of Yingli's right to repossess the panels as permitted under
24  Yingli's security agreement.

25       With respect to the "first to file" rule, dismissal or transfer is not warranted
26  "in the interest of efficiency and judicial economy" because this action is actually
27  the most direct and efficient approach.

28       Indeed, far from posing a claim-splitting problem or problem of judicial

1  economy, the Court's issuance of a writ of possession here will ***aid*** the arbitration
2  pending in New York because it will allow Yingli to regain possession and resell
3  the solar panels in order to mitigate the damages at issue in the pending arbitration.
4  Judicial interim relief such as this is appropriate when necessary to preserve the
5  meaningfulness of the arbitral process.  *See Toyo Tire Holdings v. Cont'l Tire*, 609
6  F.3d 975 (9th Cir. 2010) (a party in arbitration may petition a district court for
7  preliminary injunction to preserve the status quo pending resolution of the
8  arbitration and where the parties are awaiting the creation of the arbitration panel,
9  further explaining).  In *Toyo*, the court held explained that "the selection of
10 arbitrators and the constitution of the arbitration panel takes time" and that "parties
11 would be without remedy when, as here, the delay associated with securing an
12 arbitration panel's ruling on interim relief could defeat any ultimate award" or
13 render any subsequent relief useless.  *Id.* at 981.

14     Here, a writ of possession is necessary to ensure the meaningfulness of the
15 pending arbitration in New York.  By permitting Yingli to repossess and resell the
16 solar panel modules before the arbitrators are empanelled and can hear a claim for
17 possession, the amount in controversy at issue in the arbitration will be reduced
18 and it will be substantially more likely that there will be sufficient money to satisfy
19 the arbitrator's ruling, regardless of which way the arbitrator rules.  In contrast, if
20 this Court does not issue this writ, then the parties are likely to be faced with an
21 empty arbitral process.  Not only will the amount in controversy be much higher
22 (having not been reduced by the resale of the panels or at least by the amount that
23 the panels have depreciated over the course of the last year), but ACE will also be
24 less likely to be capable of satisfying a judgment because ACE will not be in a
25 position to satisfy all or a significant portion of the money judgment that may
26 result from the arbitration. (Complaint, ¶ 3).  Most important, allowing a writ of
27 possession would effectively halt the present and rapid decline in value of the
28 assets currently subject to the dispute, and instead preserve and freeze the value of

those assets and convert that value into a more liquid form: money. (*Id.*) Finally, any order by the arbitral body giving Yingli possession of the panels would still have to be brought to court in California for enforcement. Issuance of this writ of possession by this Court and at this time would be far more direct and efficient and would conserve judicial resources.

## VI. CONCLUSION

For the foregoing reasons, Yingli respectfully requests that this Court deny ACE's motion to dismiss.

Dated:  December 24, 2012            **FOLEY & LARDNER LLP**
                                     MICHAEL B. MCCOLLUM


By: */S/ MICHAEL B. MCCOLLUM*
    MICHAEL B. MCCOLLUM
    Attorneys for Plaintiff Yingli Green
    Energy Americas, Inc., a Delaware
    corporation